UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, LP, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:17-CV-2906-G |
| INTERNAL REVENUE SERVICE, | ) ) | |
| Defendant. | ) ) | |

MEMORANDUM OPINION AND ORDER

Before the court is a motion for summary judgment filed by the Internal

Revenue Service ("IRS"), the defendant in the instant action.  *See* Motion for

Summary Judgment (docket entry 15).  For the reasons stated below, the IRS's

motion is **GRANTED IN PART** and **DENIED IN PART**.

I.  BACKGROUND

The plaintiff, Highland Capital Management, LP ("Highland"), is a Delaware

limited partnership whose headquarters are in Dallas, Texas.  Complaint (docket

entry 1) ¶ 1. The IRS is a government agency of the United States within the meaning of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Complaint ¶ 2; Answer (docket entry 8) ¶ 2.

On June 27, 2017, Highland filed a FOIA request with the IRS seeking copies "of any and all records or documents relating to Chief Counsel Advice [("CCA")] 201442049, dated October 17, 2014 ("CCA 201442049") which was issued to [Highland] in connection with the IRS's audit of [Highland's] 2008 tax year." Appendix to Memorandum in Support for the Internal Revenue Service's Motion for Summary Judgment ("Appendix in Support"), Exhibit A (docket entry 17); *see also* Complaint ¶ 10; Answer ¶ 10. Highland's request also explained that "[f]or avoidance of doubt, this request includes any written communication or memorandum within the Internal Revenue Service pertaining to the facts or legal analysis behind CCA 201442049." Appendix in Support, Exhibit A. The IRS received Highland's request on the same date. Complaint ¶ 11; Answer ¶ 11; Appendix in Support, Exhibit 1 ¶ 5.

The deadline for the IRS to respond to Highland's request was July 26, 2017. Complaint ¶ 11; Answer ¶ 11; *see also* 5 U.S.C. § 552(a)(6)(A) (establishing 20 day deadline for an agency to respond to a FOIA request). Because Highland's FOIA request sought records related to a CCA, pursuant to IRS internal procedure Tax Law Specialist Athena Amparano was assigned to process Highland's request on July 20,

- 2 -

2017.  Memorandum in Support of the IRS's Motion for Summary Judgment

("Memorandum in Support") (docket entry 16) at 2; Appendix in Support, Exhibit 1

at 3.  On the same date, the agency sent Highland a letter stating that the IRS was

unable to respond to Highland's request by July 26, 2017.  Complaint ¶ 11; Answer

¶ 11; Appendix in Support of Highland Capital's Response ("Appendix in Support of

Response") (docket entry 19) at 6.  Specifically, the IRS's letter explained that due to

the nature of Highland's FOIA request, the agency would need additional time to

"search for, collect, and review responsive records from other locations."  Appendix in

Support of Response at 6.  Accordingly, the letter stated that the IRS was extending

the statutory response date from July 26 to August 9, pursuant to a provision of the

FOIA which allows for an additional ten-day statutory extension.  *Id*; *see also* 5 U.S.C.

§ 552 (a)(6)(B)(i) (allowing for deadline extension for not more than ten working

days in unusual circumstances).  Despite this ten day statutory extension, the IRS

letter continued, the IRS would "still be unable to locate and consider release of the

requested records by August 9, 2017."  Appendix in Support of Response at 6.  The

letter went on to explain that the IRS was extending the response date to October 27,

2017, when it believed it could provide a final response.  *Id*.

On the same date that the IRS sent this letter to Highland, Amparano also

sent a search memorandum to Melva Tyler, the supervisory legal administrative

specialist in charge of the Disclosure and Litigation Support Branch ("DLS") of the

Legal Processing Division ("LPD") of the Office of the Associate Chief Counsel (Procedure and Administration) in the Internal Revenue Service Office of Chief Counsel. Appendix in Support, Exhibit 1 at 3. This search memorandum notified the DLS that information requested by Highland fell under the jurisdiction of the Chief Counsel. *Id*. Shortly thereafter, on July 26, 2016, Melva Tyler assigned the search for the records requested by Highland to Richelle Hawkins, a paralegal in the DLS. *Id*. Hawkins informed Amparano that she was assigned to Highland's request on August 2, 2017. *Id*.

After reading Amparano's search memorandum, Hawkins determined that it would be reasonable to search for all of the records requested by Highland in the legal file for the CCA specified in Highland's request. *Id*. at 3-4. To obtain this record, a legal assistant in the DLS contacted the Chief Counsel's Docket, Records, and User Fees Branch on or about July 26, 2017, to request that the legal file for the CCA be delivered to Hawkins. *Id*. at 4. The legal file was located and all of the records contained within the file were scanned into an electronic format on or about August 4, 2017. *Id*.

About a month later, on or around September 8, 2017, Hawkins completed her review of the records requested by Highland and forwarded them to an attorney in the Office of the Associate Chief Counsel (Income Tax and Accounting) for further review. *Id*. at 6. The attorney completed his review and responded to Hawkins on

October 10, 2017.  *Id*.  Nevertheless on October 20, 2017,  Highland filed this suit, since the IRS had failed to respond to Highland's FOIA request by the statutory deadline and therefore Highland had exhausted its administrative remedies in accordance with the FOIA.  Complaint ¶ 15; *see also* 5 U.S.C. § 552(a)(6)(C)(i).

On November 20, 2017, before the IRS had submitted an answer to Highland's complaint, Chief Counsel Attorney Christopher Valvardi notified Hawkins that Highland had filed a lawsuit related to its FOIA request.  Appendix in Support, Exhibit 1 at 6.  One day later, Hawkins forwarded the responsive records she had collected and other related information to Valvardi.  *Id*. at 6-7.  Valvardi then reviewed these records and on December 19, 2017, Valvardi provided the responsive records to Stephanie Sasarak, an attorney in the tax division of the Department of Justice.  Appendix in Support, Exhibit 2 at 3.  Sasarak then provided the responsive records to Highland on the same day, along with a letter explaining that "[t]his release represents all records the [IRS] located after it conducted its search for records responsive to your request.  All non-exempt responsive records have been released."  *Id*; Appendix in Support of Highland Capital's Response at 8.  This first batch of produced documents consisted of 76 pages of responsive records bearing control numbers Highland Capital Management LP v. IRS-0001 through 00076.  Appendix in Support of Highland Capital's Response at 8.

On December 20, 2017, the day after the IRS provided Highland with the first batch of responsive documents, the IRS submitted its answer to Highland's complaint. *See* Answer. A few weeks later, on January 8, 2018, Highland and the IRS conferred over the telephone pursuant to Federal Rule of Civil Procedure 26(f). *See* Joint Status Report (docket entry 12) at 1. During this conference, Highland informed IRS counsel that Highland believed the IRS's search was inadequate. *Id*. at 2; Response (docket entry 18) at 3.

Additionally, despite Sasarak's representation that the first release of records constituted "all records" located by the IRS, after completing his review of the CCA file Valvardi determined that an additional search for email records not contained in the file was appropriate. Memorandum in Support at 4; Appendix in Support, Exhibit 2 at 3. To conduct this search, Valvardi examined the correspondence within the CCA legal file and recorded the names of Chief Counsel and IRS employees that may have assisted in drafting the CCA. Memorandum in Support at 4-5; Appendix in Support, Exhibit 2 at 3. Valvardi's search indicated that IRS employees Amy Wei, Grant Anderson, Veronica Richards (previously Veronica Trevino), Patrick White, and Alexa Dubert were involved, in some manner, in drafting the CCA. Memorandum in Support at 5; Appendix in Support, Exhibit 2 at 3. Valvardi then began contacting these IRS employees, as well as other IRS employees, seeking any emails or other records responsive to Highland's request. Specifically, Valvardi was

able to get in touch with, and obtain responsive records from: (1) Amy Wei, the primary attorney from the Office of the Associate Chief Counsel (Income Tax and Accounting) ("ITA") responsible for drafting the CCA; (2) Veronica Richards, the attorney with the Office of the Associate Chief Counsel (Large Business and International) who had submitted the original request for the CCA to ITA; (3) Patrick White and Alexa Dubert, attorneys in the Office of the Associate Chief Counsel (Financial Institutions and Products) ("FIP") who had provided assistance to Wei in drafting and reviewing the CCA; (4) Kathleen Reed, Branch Chief in ITA, who was responsible for assigning the task of drafting the CCA to Grant Anderson and Wei; and (5) Christina Morrison, an attorney in ITA who provided assistance to White and Dubert. Memorandum in Support at 5-7; Appendix in Support, Exhibit 2 at 3-6. Notably, Valvardi did not contact Grant Anderson, as Anderson had separated from the IRS Office of Chief Counsel on or about May 15, 2016. Second Declaration of Christopher Valvardi ("Second Declaration") (docket entry 22-1) at 2.

Ultimately, as a result of his additional search, Valvardi located responsive records that were not previously produced to Highland as part of the IRS' first batch of documents. Appendix in Support, Exhibit 2, at 3-6. These additional responsive records consisted of 283 pages of records bearing control numbers Highland Capital Management LP v. IRS-00077-00359. *See* Appendix in Support, Exhibit 2, at 3-7; Appendix in Support of Response at 12 (demonstrating that the IRS's second batch

of responsive records consisted of 283 pages bearing the same control numbers, and that the second batch was produced to Highland after Valvardi's additional search). After obtaining these additional responsive records, Valvardi conducted a review of all the records obtained, including the first batch of produced documents. Memorandum in Support at 7; Appendix in Support, Exhibit 2 at 6. From his review of the 359 total pages determined to be responsive, Valvardi determined that only 90 pages could be released in full, 106 needed to be withheld in part, and 163 pages could not be released at all. Appendix in Support, Exhibit 2 at 6. Valvardi then provided these additional responsive records to Sasarak, who submitted these responsive records to Highland on April 23, 2018 along with a letter which provided that "[t]his release represents all non-exempt records the [IRS] located after it conducted a supplemental search of emails. All located non-exempt responsive records have been released." Response at 4; Appendix in Support of Response, Exhibit E at 12.

On April 30, 2018, one week after the IRS provided Highland with a second batch of responsive documents, the IRS filed its motion for summary judgment. *See* Motion for Summary Judgment. On May 21, 2018 Highland filed its response. *See* Response. Shortly thereafter, on June 11, 2018, the IRS filed its reply in support of its motion for summary judgment. *See* Reply (docket entry 22). As an attachment to its reply, the IRS included a second declaration by Valvardi. *See* Second Declaration.

In his second declaration, Valvardi explains: (1) that the IRS is no longer withholding pages 00153-00154 and 00155-00156 under any statutory exemption; (2) that after the IRS filed its motion for summary judgment it conducted an additional search through Grant Anderson's emails for responsive records; and (3) that an additional 11 pages of responsive records were discovered. *Id.* at 1-5.

As to why the IRS is no longer withholding pages 00153-00154 and 00155-00156, Valvardi states that he originally withheld these records because he believed them to be purely intra-governmental emails subject to the deliberative process privilege.[1] *Id.* at 2. After learning that these records were not intra-governmental communications and were originally sent to the plaintiff, Valvardi admitted the mistake and no longer claimed that these records were subject to withholding under any FOIA exemption. *Id.*

Moreover, as to the additional search of Grand Anderson's emails, Valvardi asserts that he did not originally search through Anderson's emails because Anderson had ceased working for the IRS–meaning that his emails and other electronically stored information were not readily accessible or searchable "without undergoing a lengthy process of recovering it and reproducing it in a usable format." *Id.* at 2-3. In

---

[1] Specifically, Valvardi maintains that he originally believed that these records were intra-governmental communications because these emails were part of an email chain whose other messages were all between government employees, and because "it was not plainly clear from the [IRS's] copy of this record that the addressee was not a government employee . . . ." Second Declaration at 2.

particular, Valvardi explains that Anderson's departure from the IRS meant that his electronically stored information was not stored in a single location, it would require the work of multiple IRS divisions to recover, and it would ultimately result in undue delay in processing other cases. *Id*. at 3. Valvardi avers that he did not believe an additional search through Anderson's emails was necessary because he "determined that Mr. Anderson was not likely to have taken part in any communication pertaining to the facts and legal analysis behind [the CCA] that did not involve one of the parties involved in drafting the CCA." *Id*. at 3-4. Despite this, Valvardi explains that due to separate litigation unrelated to this case, all of Anderson's emails were collected and uploaded to a document review software. *Id*. at 4. Furthermore, Valvardi maintains that after he learned that Anderson's emails had been collected, he began to search for additional responsive records in Anderson's emails on June 7, 2018. *Id*. at 5.

Finally, as to the additional records discovered as a result of Valvardi's search through Anderson's emails, Valvardi explains that he ultimately found "11 pages containing electronic email records of which the [IRS] has not yet produced a copy from another custodian." *Id*. Valvardi avers that from his review of these eleven pages he has determined that four pages may be released in full, whereas the remaining seven pages should be withheld in part by the IRS. *Id*.

Overall, it appears that in response to Highland's FOIA request the IRS has found 370 pages of responsive documents,[2] many of which the IRS is withholding in part or in full under certain FOIA exemptions. Now that both parties have completed their briefing and the IRS's summary judgment motion is ripe for decision, this court may address the IRS's motion to determine whether the claimed exemptions apply.

## II. ANALYSIS

### A. Legal Standard

In general, summary judgment is proper only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c)(1). "In the FOIA context, however, the traditional [summary judgment] standard is modified because 'the threshold question in any FOIA suit is whether the requester can even *see* the documents the character of which determines whether they can be released.'" *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010) (quoting *Cooper Cameron Corp v. U.S. Department of Labor, Occupational Safety and Health Administration*, 280 F.3d 539, 543 (5th Cir. 2002)) (emphasis in

---

[2]     Valvardi's original declaration states that the IRS had discovered 359 total pages of responsive documents. Appendix in Support, Exhibit 2 at 6. Valvardi's second declaration further explains that after his search of Grant Anderson's emails, Valvardi uncovered an additional eleven documents. Second Declaration at 5. Accordingly, the total number of pages of responsive records that the IRS found in response to Highland's FOIA request is 370.

original).  "The FOIA expressly places the burden on the defending agency to sustain its action and show that it acted in accordance with the statute."  *Driggers v. United States*, No. 3:11-CV-0229-N, 2011 WL 5525337, at \*3 (N.D. Tex. Oct. 26, 2011) (Ramirez, M.J.) (citing *Batton*, 598 F.3d at 175; *Cooper Cameron*, 280 F.3d at 543); *see also* 5 U.S.C. § 552(a)(4)(B) (". . . and the burden is on the agency to sustain its action.").  To meet its summary judgment burden, the agency must establish that: (1) its search for the requested material is adequate; and (2) that each responsive document is either produced, unidentifiable, or exempt from production.  *Driggers*, 2011 WL 5525337, at \*3; *Cooper Cameron*, 280 F.3d at 543.

In applying this standard, the court is mindful of the FOIA's purpose.  The FOIA "embodies a philosophy of full disclosure by government agencies and requires them to make their records available to the public."  *Driggers*, 2011 WL 5525337, at \*2 (citing 5 U.S.C. § 552).  Moreover, "[t]he FOIA was enacted to 'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'"  *Batton*, 598 F.3d at 175 (quoting *Department of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)).  Accordingly, the exemptions an agency may claim to disclosure "are explicitly limited by statute and should be construed narrowly."  *Id*.  Furthermore, in a FOIA case a court should grant an agency's motion for summary judgment only if the agency identifies the documents at issue and explains why they fall under the claimed exemptions.  *Id*; *Cooper Cameron*, 280 F.3d at 543.   If there is contradictory evidence

or evidence of agency bad faith, a court should not grant summary judgment for an agency. *Gahagan v. United States Citizenship and Immigration Services*, 147 F. Supp. 3d 613, 621 (E.D. La. Dec. 2 2015) (citing *Gallant v. National Labor Relations Board*, 26 F.3d 168, 171 (D.C. Cir. 1994)).

An agency generally submits affidavits or declarations to satisfy its burden on a summary judgment motion under the FOIA. *Driggers*, 2011 WL 5525337, at *3; *Gahagan*, 147 F. Supp. 3d at 620. "These affidavits must be clear, specific, and reasonably detailed while describing the withheld information in a factual and nonconclusory manner." *Gahagan*, 147 F. Supp. 3d, at 621. In addition, affidavits and declarations submitted by an agency are entitled to a "presumption of legitimacy" unless there is evidence of bad faith in handling the FOIA request. *Batton*, 598 F.3d at 176 (citing *United States Department of State v. Ray*, 502 U.S. 164, 179 (1991)). "The presumption of legitimacy, however, does not relieve the withholding agency of its burden of proving that the factual information sought falls within the statutory exemption asserted." *Id*. In fact, even if an agency submits affidavits, a district court has the discretion to inspect the content of agency documents *in camera* to determine whether they fall under any of the FOIA exemptions. *Gahagan*, 147 F. Supp. at 621. Importantly, the Fifth Circuit has cautioned that in instances where it is determined that records do exist, the legislative intent behind the FOIA requires that a district court do something more than rely

solely upon an affidavit, be it by inspecting the records *in camera* or by requesting a *Vaughn* index.[3]  See *Batton*, 598 F.3d at 175-176.

## B.  Application

### 1.  *Adequacy of Search*

As a threshold matter, the court must first determine whether the IRS's search for responsive documents was adequate.  *Batton*, 598 F.3d at 176 (citing *Santos v. Drug Enforcement Administration*, 357 F. Supp. 2d 33, 37 (D.D.C. 2004)).  "An agency may demonstrate that it conducted an adequate search by showing that it used 'methods which can be reasonably expected to produce the information requested.'" *Id*. (citing *Oglesby v. United States Department of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  "The issue 'is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Gahagan*, 147 F. Supp. 3d at 622 (quoting *Weisberg v. United States Department of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)) (emphasis in original). As mentioned previously, to establish the adequacy of its search, an agency may

---

[3]     "The vaughn index is named after the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), and is "a routine device through which the agency describes the document responsive to a FOIA request and indicates the reasons for redactions or withholdings in sufficient detail to allow a court to make an independent assessment of the claims for exemptions." *Driggers*, 2011 WL 5525337, at *3 n. 1 (citing *Rugiero v. United States Department of Justice*, 257 F.3d 534, 544 (6th Cir. 2001)).

submit affidavits or declarations, which are afforded a presumption of good faith, and

which explain the scope of method of the search used by the agency. *Id*.

Here, the IRS relies on the declarations of Hawkins and Valvardi to explain

the IRS's search methodology. These declarations, taken together, explain that the

IRS's search was conducted in three parts. Hawkins's declaration establishes that the

first part of the IRS's search consisted of her request, and subsequent review, of the

legal file for the CCA specified in Highland's FOIA request. Appendix in Support,

Exhibit 1 at 3-4. Specifically, Hawkins's declaration explains that she only searched

for responsive records in the legal file for the CCA because IRS procedure required

that a wide array of records responsive to FOIA requests like Highland's be placed

within the legal file for the CCA,[4] and because her experience as a paralegal in DLS

led her to believe that "all records responsive to a FOIA request for records related to

a specific item of advice or guidance can be found in the legal file for that item of

advice or guidance." Appendix in Support, Exhibit 1 at 6. Hawkins's declaration

---

[4]        Highland objects to certain paragraphs of Hawkins's declaration that:
(1) explain what constitutes Chief Counsel Advice; (2) and lists the records that
should appear in the file for CCA legal advice pursuant to IRS internal procedure.
*See* Response at 15. Specifically Highland argues that these paragraphs "involve Ms.
Hawkins interpretation of what record keeping requirements are required pursuant to
statutory law and departmental manuals and are not competent evidence." *Id*.
Highland's objection is without merit. These paragraphs are not her interpretations –
they are her recitation of relevant provisions of the Chief Counsel Directives Manual,
which she has personal knowledge of as a paralegal in the DLS. *See* Appendix in
Support, Exhibit 1 at 4-5; *see also* Internal Revenue Service, Chief Counsel Directives
Manual 30.9.2.4, 30.9.2.1.

also establishes that after Highland filed suit, she sent all responsive records she found and other related information to Valvardi.  *Id*. at 6-7.

Valvardi's first declaration establishes that after he received the CCA legal file from Hawkins, he determined that an "an additional search for potentially responsive email records not contained in the legal file would be appropriate."  Appendix in Support, Exhibit 2 at 3.  Accordingly Valvardi began the IRS's second search, which consisted of Valvardi contacting IRS employees who were included in the correspondences contained in the CCA legal file.  *Id*.  Specifically, Valvardi first contacted Amy Wei, the primary attorney responsible for drafting the CCA.  *Id.*  Wei then conducted a manual search of her email application for all messages that did not appear to be included in the CCA legal file.  *Id*.  Wei also informed Valvardi that it would not be reasonably likely for Grant Anderson to have maintained any email messages related to the CCA that did not include Wei.  *Id*. at 4.  Valvardi then contacted Veronica Richards, who conducted a manual search in a file on her computer for email messages sent between March and August 2014 – the timeframe she believed would be adequate to capture all messages exchanged from the time before the request for CCA was sent until the final CCA was issued.  *Id*.  Richards also searched for non-email records in her own paper files as well as other electronic files stored on a dedicated server, separate from her own personal records.  *Id*.

Valvardi also contacted Patrick White and Alexa Dubert, who both conducted

a manual search of their email records for emails sent or received between

approximately March to August 2014 for responsive records.  *Id*. at 4-5.  Next,

Valvardi contacted Kathleen Reed, who also conducted a manual search of her

Microsoft Outlook inbox for messages from Wei or Anderson.  *Id*. at 5.  Upon finding

messages from Anderson, Reed located other email from April 2014 in her inbox

discussing the CCA.  *Id*.  Finally, Valvardi contacted Christina Morrison, who also

conducted a search of her current and archived email using the keyword "Highland"

in order to manually identify email responsive to Highland's request.[5]  *Id*. at 5-6.

---

[5]     Highland, in its response brief, argues that certain portions of Valvardi's affidavit should be stricken and not considered by this court.  Response at 6 n.1, 15-16.  Specifically, Highland claims that paragraphs 14 through 21 of Valvardi's affidavit contain hearsay and are thus inadmissible for the purpose of deciding the IRS's summary judgment motion.  *Id*. at 15-16.  The court disagrees with Highland.  "Generally, declarations accounting for searches of documents that contain hearsay are acceptable."  *Kay v. Federal Communications Commission*, 976 F. Supp. 23, 34 n. 29 (D.D.C. 1997) (citing *SafeCard Services, Inc. v. Securities and Exchange Commission*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)), *aff'd,* 172 F.3d 919 (D.C. Cir. 1998); see also *Barnard v. Department of Homeland Security*, 531 F. Supp 2d 131, 138 (D.D.C. 2008) ("Consistent with these requirements, hearsay in FOIA declarations is often permissible."); *Brophy v. United States Department of Defense*, No. Civ. A. 05-360 (RMC), 2006 WL 571901, at *4 (D.D.C. Mar. 8, 2006) ("Declarations that contain hearsay in recounting searches for documents are generally acceptable.").  Here, Valvardi was tasked with searching for the records responsive to Highland's request.  Appendix in Support, Exhibit 2 at 1-2.  Accordingly Valvardi was the most appropriate person to provide a comprehensive affidavit.

After Valvardi received additional responsive records from the parties he had contacted, Valvardi reviewed these records and determined that there were "no other locations likely to contain written communications or memoranda pertaining to the facts or legal analysis behind the CCA, and that the [IRS] does not maintain any other records systems likely to produce records responsive to [Highland's] FOIA request." Appendix in Support, Exhibit 2 at 6. Despite this representation, Valvardi's second declaration explains that he conducted a third search through Grant Anderson's emails for records responsive to Highland's Request. Second Declaration at 2-6.

In particular, Valvardi's second declaration explains that he originally did not search Anderson's emails because Anderson's departure from the IRS meant his electronically stored information was not readily accessible without engaging in a multi-step process that would require the involvement of multiple divisions within the IRS and would ultimately result in undue delays in processing cases. *Id*. at 2-3. Because of this, Valvardi determined it would be unreasonable to obligate resources to search through Anderson's emails for records responsive to Highland's request. *Id*. at 4. Nevertheless, once Valvardi learned that due to unrelated litigation Anderson's emails had been collected and stored on the IRS's document review software, Valvardi conducted a search via the document review software for emails responsive to Highland's request. *Id*. at 4-5. Specifically, Valvardi conducted a search for all of

the email for which Anderson was a sender or recipient within the time frame of March 1 to August 30, 2014. *Id*. at 5. In addition, Valvardi searched for all of the email which contained the keyword "Highland" from March 1, 2014 to August 30, 2014. Valvardi then reviewed the results and discovered 11 additional pages of electronic email records responsive to Highland's request. *Id*.

Based on the multiple searches described in the IRS's affidavits, the court concludes that the IRS has satisfied its burden of conducting an adequate search. The IRS's search uncovered 370 pages of responsive documents using varying search methods designed to accurately respond to Highland's request for "any and all records or documents related to Chief Counsel Advice 201442049." Appendix in Support, Exhibit A. Nevertheless, Highland raises a number of arguments as to why the IRS's search was inadequate. *See* Response at 5-8.

First, Highland argues that the IRS's search was inadequate and frustrated the purpose of FOIA because the IRS waited until after Highland filed suit to begin producing responsive documents. Response at 5. For the same reasons, Highland argues that the IRS's declarations should not be afforded the presumption of legitimacy. *Id*. at 7. The court finds these arguments unpersuasive. The IRS's declarations establish that IRS employees began working on Highland's request shortly after it was received, rather than waiting to begin work until after Highland brought suit. See Appendix in Support, Exhibit 1 at 2-3. Moreover, these

declarations show that the IRS was not acting in bad faith and actually notified Highland that due to the nature of Highland's request, the IRS would only be able to respond until after the statutory deadline had expired. *Id*. at 3; Appendix in Support of Response, Exhibit A at 6; see also *Batton,* 598 F.3d at 173-76 (finding that the IRS had conducted an adequate search, even though it did not respond to the plaintiff's FOIA request until after the plaintiff brought suit in federal court).

Highland also argues that the IRS's search was inadequate because the IRS failed to search for Grant Anderson's emails, which Highland argues creates a genuine dispute as to the adequacy of the IRS's search. Response at 6. Again, the court disagrees. As explained in Valvardi's second declaration, originally searching through Grand Anderson's emails would have constituted an unreasonable waste of resources and would have caused additional delays for the IRS. Second Declaration at 3. Because "[p]erfection is not the standard by which the reasonableness of a FOIA search is measured[]", *Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003), the court cannot conclude that the IRS's search was inadequate because it failed to originally comb Anderson's inbox for responsive records.[6] Moreover, even though the IRS did not *originally* search through Anderson's inbox, by the time the IRS filed its reply brief the IRS had searched through, and recovered from,

_____

[6] For the same reasons, the court cannot conclude that the IRS's search was inadequate because it failed to "explain[] why it did not enroll the assistance of an IT specialist when searching what are likely to be archived emails." Response at 7.

Anderson's inbox 11 additional responsive records. Second Declaration at 4-6. Accordingly the court finds that any genuine dispute of fact as to the adequacy of the IRS's search has been put to rest by the IRS's subsequent actions.

Finally, Highland contends that the IRS's search was inadequate because the IRS had to conduct multiple searches to find records responsive to Highland's request. Response at 5-6. The court reaches the opposite conclusion. The fact that the IRS conducted multiple searches indicates that the IRS was complying with its FOIA obligations in good faith. See *Corbeil v. Department of Justice*, No. 04-2265, 2005 WL 3275910, at *3 (D.D.C. Sept. 26, 2005) ("Rather, an agency's prompt report of the discovery of additional responsive materials may be viewed as evidence of its good faith efforts to comply with its obligations under FOIA"); *Landmark Legal Foundation v. Environmental Protection Agency*, 272 F. Supp. 2d 59, 63 (D.D.C. 2003) ("[C]ontinuing discovery and release of documents does not prove that the original search was inadequate, but rather shows good faith on the part of the agency that it continues to search for responsive documents."). Ultimately, because the court concludes that the IRS's declarations show that it used reasonable search methodology, and because the court is unconvinced by Highland's arguments to the contrary, the court concludes that the IRS has satisfied its burden of showing it conducted an adequate search.

## 2. *Records Withheld Pursuant to 26 U.S.C. § 6110*

Although the IRS seeks to shield a plethora of responsive records from being produced in full or in part through numerous statutory exemptions, the court will first address the IRS's claim that it is properly withholding responsive records pursuant to 26 U.S.C. § 6110. Specifically, the IRS argues that it is properly withholding numerous records in part or in full because these records consist of CCA and CCA background files controlled by 26 U.S.C. § 6110, which provides the exclusive remedy for obtaining such records.[7] Memorandum in Support at 23-24. In particular, the IRS claims that: (1) pages 1 and 2 are withheld in full by the IRS because they consist of copies of administrative documents that are part of the CCA background file; (2) pages 29-34 are withheld in full because they consist of copies of the final version of the CCA; (3) pages 71-76, 144-148, 158-162, 180-184, 195-199, 206-210, 224-228, and 234-238 are withheld in full because they consist of copies of the request for the CCA; (4) pages 126-141 are withheld in full because they consist of unredacted copies of CCA issued to taxpayers other than Highland; (5) pages 125, 143, 157, 193-194, 222-223, 229-233, and 243-244 are withheld in part because

---

[7]      Moreover, Valvardi's first declaration establishes that Highland also submitted a separate request for the CCA and background file documents under 26 U.S.C. § 6110 on the same date Highland submitted its FOIA request. Appendix in Support, Exhibit 2 at 12. Valvardi's declaration explains that the IRS responded separately to Highland's request under section 6110 "by providing [Highland] with copies of the documents required to be disclosed under that statute." *Id*.

they are part of the request for CCA; and (6) page 366 is withheld in part because it is an email record that is part of the request for the CCA.  Appendix in Support, Exhibit 2 at 12-13; Second Declaration at 9-10.  Additionally, the IRS argues that Highland cannot ask for this court to require that the IRS disclose the CCA and related background files, because an action for their disclosure under 26 U.S.C. § 6110 may only be brought in the District Court for the District of Columbia or the United States Tax Court.  Memorandum in Support at 24 (citing 26 U.S.C. § 6110(f)(4)(A)).

After reviewing the parties' arguments, as well as the relevant statutes, the court concludes that summary judgment should be granted in favor of the IRS as to the records withheld pursuant to 26 U.S.C. § 6110.  Section 6110(a) provides that "[e]xcept as otherwise provided in this section, the text of any written determination and background file document relating to such written determination shall be open to public inspection at such place as the Secretary may by regulations prescribe."  26 U.S.C. § 6110(a).  The term "written determination" as used in the statute includes Chief Counsel Advice.  *Id*. § 6110(b)(1)(A).  Furthermore, a background file document includes "the request for that written determination, any written material submitted in support of the request, and any communication . . . between the Internal Revenue Service and persons outside the Internal Revenue Service in connection with such written determination . . . received before issuance of the

written determination." *Id*. § 6110(b)(2). Moreover, as the IRS correctly pointed out, 26 U.S.C. § 6110(m) establishes this statute as the exclusive remedy by which a party may obtain a CCA determination and related background files, as "[t]he Secretary shall not be required by any Court to make any written determination or background file document open or available to public inspection[.]" *See* 26 U.S.C. § 6110(m); *Long v. United States Internal Revenue Service*, 742 F.2d 1173, 1178 (9th Cir. 1984) ("Congress, wishing to exclude section 6110 from FOIA, specifically made known its intention by providing that section 6110 was to be the exclusive remedy where disclosure of written determinations were sought and that the rules and procedure of FOIA would not apply.").

Here, Valvardi's declarations establish that the withheld records consist of either: (1) copies of the CCA specified in this case; (2) unredacted copies of CCA issued to taxpayers other than Highland; (3) copies of the request, or parts of the request, for the CCA; and (4) administrative documents that are part of the CCA background file. Appendix in Support, Exhibit 2 at 12-13; Second Declaration at 9-10. Valvardi's declarations therefore show that the withheld records consist of written determinations and background files related to such written determinations within the meaning of 26 U.S.C. § 6110. As such, it is section 6110–not the FOIA–that exclusively provides Highland with the means to obtain these records. *See* 26 U.S.C. § 6110(m). Since Highland's complaint did not state a claim seeking relief

under section 6110, *see* Complaint, the court concludes that it lacks jurisdiction in this action to compel the IRS to produce these withheld documents. Moreover, even if the court had jurisdiction, this court would not be the proper venue for an action under 26 U.S.C. § 6110. *See* 26 U.S.C. § 6110(f)(4)(A) (establishing that action must be brought in Tax Court or District Court for the District of Columbia). Additionally, as Highland provides no arguments contrary to any of the IRS's contentions related to section 6110, the court concludes that the IRS has satisfied its summary judgment burden as to the records withheld pursuant to this statute. Accordingly, the IRS may withhold: (1) pages 1 and 2 in full; (2) pages 29-34 in full; (3) pages 71-76, 144-148, 158-162, 180-184, 195-199, 206-210, 224-228, and 234-238 in full; (4) pages 126-141 in full; and (5) pages 125, 143, 157, 193-194, 222-223, 229-233, 243-244, and 366 in part.[8]

### 3. *Records Withheld Under Exemption 3*

The IRS also argues that it may withhold pages 126 through 141 in full and pages 124, 200, and 370 in part under the third FOIA exemption. Memorandum in Support at 16-17; Appendix in Support, Exhibit 2 at 7; Second Declaration at 6.

---

[8]     As noted in Valvardi's first declaration, the IRS has already responded separately to Highland's request for documents under section 6110. Appendix in Support, Exhibit 2 at 9. Therefore, the court's statement that the IRS "may withhold" certain documents pursuant to section 6110 may be a misnomer, since the IRS has already produced documents responsive to Highland's section 6110 request. Regardless, the law is clear that Highland cannot compel the IRS to produce these withheld documents under the FOIA.

Because the court has already determined that pages 126 through 141 are CCA related to other taxpayers, and therefore written determinations that may only disclosed pursuant to 26 U.S.C. § 6110, the court will only analyze whether the IRS has satisfied its burden of proving that pages 124, 200, and 370 are covered by exemption 3.[9]

"FOIA Exemption 3, 5 U.S.C. § 552(b)(3)(2006), states that an agency need not disclose any documents 'specifically exempted from disclosure by statute' if the statute 'requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue' or 'establishes particular criteria for withholding or refers to particular types of matters to be withheld.'" *Batton*, 598 F.3d at 177 (quoting 5 U.S.C. § 552(b)(3)(2006)). "Section 6103 of the Internal Revenue Code, in turn, provides that tax returns, as well as return information, are confidential and shall not be disclosed to anyone other than the taxpayer." *Id*. (citing 26 U.S.C. § 6103(a)(2006)). Accordingly, section 6103 of the Internal Revenue Code is a qualifying statute under the third FOIA exemption. *Id*.

---

[9] Highland contends by way of its response that the IRS seeks to withhold "91 pages of records" under exemption three. Response at 13. Highland's understanding of Valvardi's declarations is incorrect. Valvardi's declaration claimed that pages 126 through 141 are withheld in full under exemption three, and that pages 124 *and* 200 are withheld in part under the same. Appendix in Support, Exhibit 2 at 7. Valvardi's second declaration only contended that page 370 is additionally withheld under exemption three. Second Declaration at 6. These pages, taken together, certainly do not amount to 91 pages of records.

To support its claim that exemption three applies to pages 124, 200, and 370 the IRS relies on Valvardi's declarations. *See* Memorandum in Support 17. In particular, Valvardi's first declaration provides that "[p]ages 124 and 200 are emails sent from and received by Chief Counsel attorneys. They are withheld in part under Exemption 3 in conjunction with IRC § 6103(a) because they contain the names or other private return information as defined by IRC § 6103(b) of taxpayers who are not [Highland]." Appendix in Support, Exhibit 2 at 16. Similarly, Valvardi's second declaration explains that page 370 is withheld in part because "[p]age 370 is an email sent from and received by Chief Counsel attorneys. This email contains the name and other private return information . . . of a taxpayer who is not [Highland]. This is third party information that was collected, received, or generated by the [IRS] with respect to the possible existence of liability of a taxpayer other than [Highland]." Second Declaration at 6.

Highland argues that despite Valvardi's declarations the IRS has not met its burden to describe the documents at issue and explain why they are covered by exemption three. Response at 13. Highland contends that Valvardi's declaration simply listed page numbers while making conclusory statements that the documents contained the return information of taxpayers other than Highland. *Id*. In particular, Highland analogizes Valvardi's declarations to the affidavits in *Batton*, which the Fifth Circuit found to be insufficient. *Id.* (citing *Batton*, 598 F.3d at 177-78). For

these reasons, Highland claims that Valvardi's declarations make it difficult for the court to determine whether the withheld pages are exempt under exemption three. *Id*. Accordingly, Highland requests that the court compel the IRS to produce a *Vaughn* index with respect to the records withheld under exemption three. *Id*. at 13-14.

Upon reviewing the parties' arguments and the summary judgment record, the court concludes that the IRS has satisfied its summary judgment burden with respect to the records withheld in part under FOIA exemption three. Despite Highland's contentions, the IRS's declarations did not make it difficult or impossible for this court to reach its own conclusion on this issue. Nor does the court find Valvardi's declarations to be similar to the insufficient affidavit at issue in *Batton*. There, the IRS sought to withhold in full a number of examination workpapers under the third FOIA exemption. *Batton*, 598 F.3d at 177. To satisfy its burden, the IRS submitted a declaration which asserted that "certain Examination Workpapers consisting of case history notes and information from private sources [that] contain return information for persons other than plaintiff are exempt from disclosure to plaintiff under FOIA exemption (b)(3) in conjunction with Internal Revenue Code § 6103(a)." *Id*. After reviewing this declaration, as well as the summary judgment record, the Fifth Circuit determined that it was impossible to tell whether the records in question contained third party taxpayer information. *Id*. at 177-78. Specifically, the Fifth Circuit

determined that this declaration was insufficient, and thus summary judgment improper, because the "general description of 'case history notes and information from private parties' [did] not tell [the Fifth Circuit] anything about the individual documents and why more general information–for example, the dates, authors, or brief description of the subject matter of the notes and information–cannot be disclosed." *Id.* at 178. Consequently, the Fifth Circuit determined that more was required from the IRS, such as submitting a *Vaughn* index, to establish that FOIA exemption three applied. *Id.*

Here, the Valvardi declarations submitted by the IRS do not employ the same approach as the declarations at issue in *Batton*. In fact, unlike the declaration in *Batton*, Valvardi's first declaration explains the nature of the documents partially withheld as well as the nature of the specific information that is being partially withheld under FOIA exemption three. *See* Appendix in Support, Exhibit 2 at 7 (explaining that pages 124 and 200 are "emails sent from and received by Chief Counsel attorneys" that contain the *names* and other private return information of taxpayers other than Highland, and that were collected by the IRS with respect to the possible existence of liability of taxpayers other than Highland); Second Declaration at 6 (explaining that page 370 "is an email sent from and received by Chief Counsel attorneys" that contains the *name* and other private third party return information of a taxpayer that is not Highland, and that was collected by the IRS with respect to the

possible existence of liability for a taxpayer other than Highland).  Moreover, unlike the declaration in *Batton* that used very general language to suggest that exemption three allowed the IRS to fully withhold certain examination workpapers, Valvardi's declarations specifically highlight why pages 124, 200, and 370 are only withheld in part.  *See* Appendix in Support, Exhibit 2 at 7; Second Declaration at 6.

Finally, the court finds that the nature of the documents withheld in part by the IRS here also distinguishes the IRS's position from its position in *Batton*.  There, the Fifth Circuit observed that it did not "logically flow" from the nature of the records withheld by the IRS that there would be third party return information subject to protection by 26 U.S.C. § 6103 contained within the documents.  *Batton*, 598 F.3d at 178.  The court finds the opposite true in this case.  That is to say, it appears logical that emails between Chief Counsel Attorneys, collected with respect to the possible existence of liability for taxpayers other than Highland, would necessarily have third party tax information that should be withheld in part.

It is for these reasons that the court concludes that summary judgment should be granted in favor of the IRS as to the records withheld in part under FOIA exemption three.  Accordingly, the court declines to order the IRS to produce a separate *Vaughn* index for pages 124, 200, and 370.  Additionally, the IRS may withhold pages 124, 200, and 370 in part.

### 4. *Records Withheld Under Exemption 5 for Attorney Client Privilege*

The IRS also seeks to withhold responsive records, in full and in part, under FOIA exemption five, 5 U.S.C. § 552(b)(5) because the IRS contends these records are protected by attorney-client privilege. Memorandum in Support at 17; Appendix in Support, Exhibit 2 at 8-9; Second Declaration at 6-7. Specifically, the IRS contends that it is withholding: (1) pages 71-76, 144-148, 158-162, 180-184, 195-199, 206-210, 224-228, and 234-238 in full because they consist entirely of the request submitted to a Chief Counsel attorney for CCA; (2) pages 126-141 in full because they contain copies of CCA provided in connection with other taxpayers' cases and were provided by Counsel as part of a response to a request for legal advice; (3) pages 57, 122, 125, 143, 157, 193-194, 201-203, 219, 221-223, 229-233, 240-241, 243-244, and 366 in part because they are email messages which communicate confidential advice or requests for advice from Counsel attorneys related to the draft of the CCA at issue in this case; (4) pages 185 and 187 in part–and page 186 in full–because these pages contain notes summarizing a discussion involving Counsel attorneys during the course of providing legal advice. Appendix in Support, Exhibit 2 at 7-9; Second Declaration at 6-7.

Because the court has already determined that the IRS need not disclose pages 71-76, 144-148, 158-162, 180-184, 195-199, 206-210, 224-228, 234-238, 126-141, 125, 143, 157, 193-194, 222-223, 229-233, 243-244, and 366 pursuant to 26 U.S.C.

§ 6110, the court will not analyze FOIA exemption 5 with respect to these pages.

Accordingly, the court will only analyze whether the IRS has satisfied its burden of

proving that FOIA exemption five allows for: (1) pages 57, 122, 125, 143, 157, 193-

194, 201-203, 219, 221, 240-241, 185, and 187 to be withheld in part; and (2) page

186 to be withheld in full.

The fifth FOIA exemption protects from disclosure "inter-agency or intra-

agency memorandums or letters that would not be available by law to a party other

than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "To qualify, a

document must thus satisfy two conditions; its source must be a [g]overnment

agency, and it must fall within the ambit of a privilege against discovery under

judicial standards that would govern litigation against the agency that holds it."

*Department of the Interior v. Klamath Water Users Protective Association*, 532 U.S. 1, 8

(2001). "The Fifth Circuit has interpreted exemption five to encompass the attorney-

client privilege, the attorney work product privilege, and the deliberative process

privilege." *Gahagan*, 147 F. Supp. 3d at 629 (citing *Shermco Industries, Inc. v. Secretary

of the Air Force*, 613 F.2d 1314, 1318 (5th Cir. 1980)).

"In the context of a FOIA request, 'the agency is the 'client' and the agency's

lawyers are the 'attorneys' for purposes of attorney-client privilege.'" *Id*. (quoting

*Judicial Watch, Inc. v. United States Department of Treasury*, 796 F. Supp. 2d 13, 33

(D.D.C. 2011)). "To invoke the privilege, the agency must show that the withheld

document (1) involves confidential communications between an attorney and the agency and (2) relates to a legal matter for which the agency has sought professional advice." *Id*. (internal brackets and citations omitted).

Here, the IRS relies on Valvardi's declaration to satisfy its summary judgment burden. Memorandum in Support at 17-18. Valvardi's first declaration contends that: (1) pages 57, 122, 201-203, 221, and 240-241 should be withheld in part because they communicate confidential advice or requests for advice from counsel attorneys related to the draft of the CCA; (2) pages 185 and 187 should be withheld in part because they contain notes summarizing a discussion involving IRS counsel attorneys during the course of providing the requested legal advice; and (3) page 186 should be withheld in full for the same reason as pages 185 and 187. Appendix in Support, Exhibit 2 at 8-9. Moreover, Valvardi's first declaration explains that these records "are intra-agency communications to and from [the IRS] and/or Chief Counsel employees" and that these records "contain facts or analysis relating to a legal matter for which the [IRS] has sought professional advice from Chief Counsel." *Id*.

Highland argues that Valvardi's declarations fail to sufficiently detail the documents and explain why the attorney client exemption is applicable. Response at 14. Specifically, Highland contends that Valvardi's declarations have "generally stated that the documents contain legal advice and are exempt without giving

Highland sufficient information, such as the sender, the recipient, and description of the contents in the 'exempt' pages." *Id*. Highland thus asks this court to order the IRS to produce a *Vaughn* index for records the IRS claims are properly withheld under FOIA exemption five. *Id*.

The court agrees with Highland and concludes that the IRS has failed to satisfy its burden on summary judgment for the pages withheld in full and in part under the fifth FOIA exemption for attorney client privilege. This is because it is clear to the court that the declarations offered by the IRS are similar to, and therefore share the same deficiencies as, the declarations at issue in *Gahagan*.

In *Gahagan*, the district court denied the United States Citizenship and Immigration Services's motion for summary judgment because the agency's declaration did "not contain enough information to permit the [c]ourt to determine whether [the] privilege applies." *Gahagan*, 147 F. Supp. 3d at 629. The declaration provided by the agency explained the assertion of attorney client privilege by stating "[t]his email provides internal discussion between USCIS counsel to USCIS personnel on litigation against the agency." *Id*. Here, the Valvardi declaration similarly explains the agency's assertion of attorney client privilege by stating that the withheld documents are "intra-agency communications to and from [the IRS] and/or Chief Counsel employees" consisting of: (1) some email messages withheld in part "because they communicate confidential advice or requests for advice from

Counsel attorneys related to the draft of the CCA[;]" and (2) pages containing notes "summarizing a discussion involving Counsel attorneys during the course of providing requested legal advice." Appendix in Support, Exhibit 2 at 8-9. Put simply, both the declaration at issue in *Gahagan* and the declarations at issue here fail to support summary judgment because they are too vague to allow a court to determine if the attorney client privilege applies. Valvardi's declarations in particular do not provide the court with sufficient information to properly evaluate the IRS's claim of privilege because they neither inform the court of the source and recipient of the communications, nor provide the court with a description of the matters discussed in the withheld documents. See *Gahagan v. United States Citizenship and Immigration Services*, No. 15-2540, 2017 WL 3393993 at *2 (E.D. La. Aug. 8, 2017)(concluding that the agency had finally satisfied summary judgment burden of establishing that certain emails were properly withheld under the fifth FOIA exemption for attorney client privilege only after the agency had submitted a supplemental *Vaughn* index that provided the specific source and recipient of the records in question, as well as a detailed description of the matters discussed).

Accordingly, the court denies summary judgment in favor of the IRS as to the records withheld in full and in part under FOIA exemption five for attorney client privilege. The IRS shall therefore file the records the IRS seeks to withhold under the fifth FOIA exemption for attorney client privilege under seal for an *in camera*

inspection.

5.  *Records Withheld Under Exemption 5 for Deliberative Process Privilege*

The IRS also seeks to withhold records under the deliberative process privilege by way of the fifth FOIA exemption.  Memorandum in Support at 18-20.  In particular, the IRS seeks to: (1) withhold in full pages 37-38, 40-41, 43-49, 55-56, 58-64, 71-76, 95-101, 120-121, 126-141, 144-148, 158-162, 173-174, 177-178, 180-184, 186, 191-192, 195-199, 206-210, 224-228, 234-238, 251-257, 266-272, 274-280, 283-295, 299-305, 309-315, 319-325, 344-350; and (2) withhold in part pages 35-36, 39, 42, 50-51, 57, 65-67, 77-83, 86-87, 89-90, 92-94, 102-106, 108-109, 111, 122, 125, 143, 153, 156, 157, 163, 172, 175-176, 193-194, 201-203, 219, 221, 222-223, 229-233, 239-242, 243-244, 245, 248-250, 258-259, 261-263, 265, 281, 297, 306-308, 316-318, 326-330, 332-339, 341-342, 351-352, 354-356, 360-361, 364-365, 366, 367, and 370.[10]  Appendix in Support, Exhibit 2 at 11; Second Declaration at 9.  Because the court has already concluded that, pursuant to 26 U.S.C. § 6110, the IRS cannot be required under FOIA to disclose pages 71-76, 126-141, 144-148, 158-162, 180-184, 195-199, 206-210, 224-229, and 234-238, nor can the IRS be required to disclose in part pages 125, 143, 157, 193-194, 222-223,

---

[10]     The IRS originally withheld pages 153-154 and 155-156 under the deliberative process privilege, but has since released the pages after admitting that it erred when reviewing these records to determine if they should be withheld.  Reply at 8.  The court will therefore not discuss whether these pages are subject to the deliberative process privilege.

229-233, 243-244, and 366, the court will not analyze whether the deliberative

process privilege applies to these pages. In consequence, the court will only analyze

whether the IRS has satisfied its summary judgment burden of proving that the

remaining pages are covered by the deliberative process privilege through the fifth

FOIA exemption.

As noted above, the Fifth Circuit has determined that FOIA exemption five

encompasses the deliberative process privilege. See *Gahagan*, 147 F. Supp. 3d at 629

(citing *Shermco Industries, Inc.*, 613 F.2d at 1318). "The purpose of the deliberative

process privilege is to enhance the quality of agency decisions by assuring individuals

'who offer information and opinions to the [g]overnment that their communications

will be kept in confidence.'" *Id*. (quoting *Shermco Industries, Inc.*, 613 F.2d at 1318).

For the deliberative process privilege to apply, "a document must be both

'predecisional' and 'deliberative.'" *Id*. (citing *Vaughn v. Rosen*, 523 F.2d 1136, 1144

(D.C. Cir. 1975)). A document is predecisional if it was generated before the

adoption of an agency policy. *Id*. (citing *Coastal States Gas Corp. v. Department of

Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). A document is deliberative if "it

reflects the give-and-take of the consultative process." *Id*. (citing *Judicial Watch, Inc. v.

Food and Drug Administration*, 449 F.3d 141, 151 (D.C. Cir. 2006)). "In other words,

the document must be such that public disclosure 'would expose an agency's

decisionmaking process in such a way as to discourage candid discussion within the

agency and thereby undermine the agency's ability to perform its functions.'" *Id*. at

629-630 (quoting *Dudman Communications Corp. v. Department of the Air Force*, 815

F.2d 1565, 1568 (D.C. Cir. 1987)).  The agency bears the burden of establishing the

deliberative process involved and the role played by the documents at issue in the

course of that process.  *Id*. at 630.  "Conclusory allegations that merely parrot the

legal test do not suffice."  *Id*. (citing *Senate of the Commonwealth of Puerto Rico on behalf

of the Judiciary Committee v. United States Department of Justice*, 823 F.2d 574, 585 (D.C.

Cir. 1987)).

      Here, the IRS relies on Valvardi's declarations to establish that the deliberative

process applies to certain records involved in this case.  Memorandum in Support at

20.  In his first declaration, Valvardi explains that: (1) pages 37-38, 43-49, 55-56, 58-

64, 95-101, 120-121, 173-174, 177-178, 191-192, 251-257, 266-272, 274-280, 283-

295, 299-305, 309-315, 319-325, and 344-350 are withheld in full because they

contain copies of drafts of the CCA; (2) [p]ages 185 and 187 are withheld in part,

and page 186 is withheld in full, because these pages contain notes summarizing the

deliberations of [the IRS] and Counsel employees involved in drafting the CCA and

determining [Highland's] liability[;]" and (3) pages 35-36, 39, 50-51, 57, 65-67, 77-

83, 86-87, 89-90, 92-94, 102-106, 108-109, 111, 122, 153, 156, 163, 172, 175-176,

201-203, 219, 221, 239-242, 245, 248-250, 258-259, 261-263, 265, 281, 297, 306-

308, 316-318, 326-330, 332-339, 341-342, 351-352, 354-356 are "withheld in part

because they consist of email communications among Chief Counsel and/or [IRS] employees that reflect predecisional thoughts and deliberations regrading the draft CCA." Appendix in Support, Exhibit 2 at 11.

In more general terms, Valvardi's first declaration also claims that the records withheld under the deliberative process privilege are both deliberative and predecisional. *Id*. at 10. Valvardi maintains that they are deliberative "because they discuss or propose options for advising examiners on how to reach the proper enforcement determinations, or provide suggested revisions, legal analysis, and other comments on the language of the draft CCA." *Id*. Additionally, Valvardi contends that the information contained in the withheld records is predecisional because "it reflects opinions and recommendations of agency personnel that precede the decision to make adjustments to [Highland's] tax liability." *Id.* Moreover, Valvardi's first declaration claims that the material within the withheld records is predecisional because the IRS's "exam is not finished as it has been halted because of another tax matter pertaining to [Highland.]" *Id*.

In his second declaration, Valvardi avers that pages 360-361, 364-365, 367, and 370 are withheld in part under the deliberative process privilege "because they consist of email communications among Chief Counsel and/or Service employees that reflect pre-decisional thoughts and deliberations regarding the draft CCA." Second Declaration at 9. Valvardi's second declaration also claims in the same general terms

as his first declaration that the records withheld under the deliberative process privilege are deliberative and predecisional. *Compare* Second Declaration at 8-9 *with* Appendix in Support, Exhibit 2 at 10.

Highland takes issue with the IRS's declarations and argues that they are insufficient to support the IRS's assertion of the deliberative process privilege. Response at 10-13. First, Highland argues that Valvardi's affidavits fail "to describe or explain (1) whether or not the many documents [the IRS] is claiming are exempt under the deliberative process [privilege] contain factual information that is not exempt, and/or (2) how the redacted discussion contributed to the IRS's predecisional deliberations." *Id*. at 10. Second, Highland contends that the IRS's redactions demonstrate that the IRS has improperly asserted the deliberative process privilege throughout their production. *Id*. at 11-13. To support this argument, Highland specifically highlights how page 153–which has since been produced–was incorrectly redacted by the IRS, since it was a fax that was originally sent to Highland and was not part of the IRS's decisionmaking process. *Id*. at 11.

Highland also raises issue with the IRS's redaction of certain responsive records, such as a memorandum prepared by the IRS's audit team, and multiple documents labeled as containing the facts of Highland's CCA. *Id*. at 11-12. In particular, Highland contends that these documents should not be redacted because they contain segregable facts. *Id*. at 12. In support of this claim, Highland points to

multiple responsive records produced by the IRS which indicate that non-privileged facts are contained within these redacted documents. *Id*. Consequently, Highland contends a genuine issue of material fact exists as to whether the IRS has properly claimed the deliberative process privilege. *Id*. Highland thus requests that the court conduct an *in camera* review of pages 233-238, 119-123, 176-178, and 172-174. *Id*. at 13.

Based on Highland's arguments, as well as the IRS's declarations, the court concludes that the IRS has failed to satisfy its burden on summary judgment as to the records withheld under the deliberative process privilege. Although the court concludes that summary judgment on this issue is improper, the court finds that the IRS's affidavits establish that the information and material withheld under the deliberative process are predecisional. *See* Appendix in Support, Exhibit 2 at 10 (noting that the information reflects opinions and recommendations of IRS personnel that precede the decision to adjust Highland's tax liability and explaining that the material is predecisional because the IRS's examintion of Highland is not finished); Second Declaration at 9 (establishing the same). Despite this, it is clear to the court that the IRS's "description of its deliberative process is too vague to justify the agency's claim to exemption five protection." *Gahagan*, 147 F. Supp. 3d at 630.

For starters, the IRS's declaration does not provide any details about the type of information that the withheld records contain, other than general statements

about the basic nature of the documents and conclusory assertions that the documents contain "thoughts and rationale" or other "deliberations."  *See* Appendix in Support, Exhibit 2 at 11; Second Declaration at 9.  In addition, the IRS's declarations fail to explain to the court how the redacted or fully withheld records contributed to the agency's deliberations with regard to the CCA at issue in this case.  Instead, the IRS's declarations offer the court nothing more than opaque explanations as to how the withheld records contributed to the agency's deliberations, such as statements that the withheld records contain "thoughts and rationale that may not have been reflected in the published CCA" or "the deliberations of employees of the [IRS] or their counsel."  Appendix in Support, Exhibit 2 at 9, 11; Second Declaration at 8-9.  Precedent makes clear that the IRS must do more to establish that the deliberative process privilege applies to the withheld records.  See *Gahagan*, 147 F. Supp. 3d at 630 (concluding that agency had failed to satisfy summary judgment standard for application of deliberative process privilege, where agency's *Vaughn* index provided no details about the type of information the withheld documents contained, or how the redacted sections contributed to the agency's deliberations); *Hall v. United States Department of Justice*, 552 F. Supp. 2d 23, 29 (D.D.C. 2008) (concluding agency's declaration in support of the deliberative process privilege was insufficient, where declaration neither identified the specific deliberative process at issue, nor explained that the role withheld

documents played in the agency's deliberations).  Accordingly, the court denies

summary judgment on this issue and orders the IRS to file the records the IRS seeks

to withhold under the deliberative process privilege under seal for an *in camera*

inspection.

6.  <i>Records Withheld Under Exemption 7(A)</i>

The last exemption claimed by the IRS is FOIA exemption 7(a), 5 U.S.C.

§ 552(b)(7)(A).  The IRS seeks to withhold page 185 and 187 in part, as well as page

186 in full, under this exemption.  Memorandum in Support at 22-23; Appendix in

Support, Exhibit 2 at 12.

Exemption 7(a) provides that "records or information compiled for law

enforcement purposes" may be withheld by an agency in response to a FOIA request,

"but only to the extent that the production of such law enforcement records or

information (A) could reasonably be expected to interfere with enforcement

proceedings."  5 U.S.C. § 552(b)(7)(A).  To satisfy its burden and withhold records

under exemption 7(a), the agency must establish "that (1) the documents were

investigatory records compiled for law enforcement purposes and (2) production of

the documents would interfere with pending enforcement proceedings."  *Pruitt Electric*

*Co. v. United States Department of Labor*, 587 F. Supp. 893, 895 (N.D. Tex. 1984)

(Fish, J.).

To satisfy its burden, the IRS relies on Valvardi's first declaration. Memorandum in Support at 22-23. This declaration claims that the IRS is withholding these records under exemption 7(a) "because they contain information relevant to the civil examination, a law enforcement matter, which has been suspended but is not yet concluded." Appendix in Support, Exhibit 2 at 12. The declaration further specifies that releasing this information "may reasonably be expected to interfere with ongoing enforcement proceedings" because disclosing this information will harm the examination by "prematurely revealing the [IRS's] evidence and strategy, revealing the nature, direction, scope and focus of the [IRS's] case, and giving premature insight into the strength of the [IRS's] position and its reliance on certain evidence." *Id*. With respect to the specific pages at issue, Valvardi's declaration explains that "[p]ages 185 and 187 are withheld in part, and page 186 is withheld in full, because these pages contain notes summarizing the deliberations of [the IRS] and Counsel employees involved in determining [Highland's] liability, and their disclosure would reveal the focus and direction of the [IRS's] investigation." *Id*.

Highland once again argues that the IRS's declaration is insufficient to support the application of exemption 7(a) to pages 185, 186, and 187. Response at 14-15. Highland offers little explanation for this argument other than the claim that "Valvardi's affidavit . . . contains legal conclusions and otherwise conclusory

statements that make it difficult for Highland and the [c]ourt to ascertain whether the exemption is proper." *Id*. at 15. Because of these alleged defects in Valvardi's declaration, Highland asks this court to require the IRS to produce a *Vaughn* index concerning these records. *Id*.

"In the seminal case of *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S. Ct. 2311, 57 L.Ed. 2d 159 (1978), the Supreme Court held that federal courts may make generic determinations that, with respect to certain kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally interfere with enforcement proceedings." *Pruitt Electric Co*., 587 F. Supp. at 895 (citing *NLRB*, 437 U.S. at 236, 98 S. Ct. at 2323); see also *Solar Sources, Inc. v. United States*, 142 F. 3d 1033, 1038 (7th Cir. 1998) ("It is accordingly well-established that the [g]overnment may justify its withholdings by reference to generic categories of documents, rather than document-by-document."). The Fifth Circuit has expounded upon this Supreme Court decision, explaining that "generic categorical determinations of exemption may be made under Exception 7(a) for witness statements." *Batton*, 598 F.3d at 182. Other circuits have also explained that under *NLRB v. Robbins Tire & Rubber Co*. such generic categorical determinations of exemption may be made with respect to "affidavits and interviews of charging parties, fellow employees and witnesses; correspondence with attorneys and charging parties; internal memoranda of the [a]gency concerning the charge." *J.P. Stevens & Co., Inc. v.*

*Perry*, 710 F.2d 136, 143 (4th Cir. 1983). Nevertheless, the Fifth Circuit has warned that when "it is impossible to determine the exact *type* of documents" at issue, an affidavit that speaks "categorically about a generic group of documents" will not suffice as an agency's proof that exemption 7(a) applies. *Batton*, 598 F.3d at 182 (emphasis in original).

Here, it is not impossible for the court to determine the types of documents the IRS seeks to withhold under exemption 7(a). In fact, Valvardi's declaration makes clear that pages 185-186, and 187 are "notes summarizing the deliberations of [the IRS] and Counsel employees" that, if disclosed, would reveal the focus, evidence, scope, strategy, and direction of the IRS's investigation. Appendix in Support, Exhibit 2 at 12. The IRS's generic categorical description of these withheld records therefore demonstrates to the court that these notes are akin to, in the words of *Perry*, 710 F.2d at 143, "internal memoranda concerning the charge" and may thus be withheld pursuant to exemption 7(a). Accordingly, the court concludes that the IRS has satisfied its burden on summary judgment in respect to the records withheld pursuant to exemption 7(a), and the IRS need not product a *Vaughn* index for records withheld under this exemption.

III. <u>CONCLUSION</u>

For the reasons stated above, the court **GRANTS IN PART** and **DENIES IN PART** the IRS's motion for summary judgment. For the records on which summary

judgment is denied, *i.e.*, those records withheld due to FOIA Exemption Five (attorney-client privilege) and FOIA Exemption Five (deliberative process privilege), the IRS shall, within fifteen days of this date, file those records under seal for *in camera* inspection by the court.

**SO ORDERED.**

March 15, 2019.

A. JOE FISH
**Senior United States District Judge**